# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

MICHELLE M.[1],

               Plaintiff,

      v.

FRANK BISIGNANO,
COMMISIONER OF SOCIAL
SECURITY,

               Defendant.

CIVIL NO. 3:23-CV-02163

(LATELLA, M.J.)

## <u>MEMORANDUM</u>

This is an action brought under Section 1383(c) of the Social

Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final

decision of the Commissioner of Social Security (hereinafter, "the

Commissioner") denying Plaintiff Michelle M.'s claims for disability

benefits under Title XVI of the Social Security Act.  (Doc. 1).  Both

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial.  *See Tammy H. v. Frank Bisignano, Commissioner of Social Security*, No. 1:24-cv-00838, Docket No. 19 at n.1 (M.D. Pa. Aug. 27, 2025).

parties consented to a magistrate judge conducting all proceedings in the case.  (Doc. 7).  For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision will be vacated and the matter will be remanded for rehearing.

## 1. BACKGROUND AND PROCEDURAL HISTORY

On February 2, 2021, Plaintiff Michelle M. ("Ms. M.") filed an application for Title XVI benefits.  (Doc. 9-2 at 18).[2]  In these applications, Ms. M. claimed disability beginning September 15, 2011. (*Id*).  The Social Security Administration initially denied Ms. M.'s claims on August 3, 2021.  (*Id*.).  Ms. M. filed a request for a hearing before an Administrative Law Judge ("ALJ") on May 17, 2022.  (*Id*.). ALJ Richard Guida conducted the requested hearing on August 31, 2022. (*Id*.).  Ms. M. amended her alleged onset date to February 2, 2021. (*Id*.).

---

[2] Citations are to the ECF document numbers and pagination.

In a written opinion dated November 2, 2022, the ALJ determined that Ms. M. is not disabled and therefore not entitled to the benefits sought.  (Doc. 9-2, at 31).  Ms. M. appealed the ALJ's decision to the Appeals Council, who, on October 26, 2023, denied Ms. M.'s request for review.  (Doc. 9-2 at 2).  On December 29, 2023, Ms. M. filed the instant action.  (Doc. 1).  The Commissioner responded on February 29, 2024, providing the requisite transcripts from the disability proceedings on August 31, 2022.  (Doc. 8; Doc. 9).  The parties then filed their respective briefs (Doc. 12; Doc. 16; Doc. 21), with Ms. M. alleging three errors warranting reversal or remand.  (Doc. 12 at 1).

## 2. THE ALJ'S DECISION

In a decision dated November 2, 2022, the ALJ determined Ms. M. "has not been under a disability, as defined in the Social Security Act, since February 2, 2021, the amended alleged onset date and the date the application was filed." (Doc. 9-2 at 29).  The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act.  *See* 20 C.F.R. § 404.1520.

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R §

3

404.1520(a)(4)(i).  If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience.  20 C.F.R. § 404.1520(b).  SGA is defined as work activity— requiring significant physical or mental activity—resulting in pay or profit.  20 C.F.R. § 404.1572.  In making this determination, the ALJ must consider only the earnings of the claimant.  20 C.F.R. § 404.1574. The ALJ determined Ms. M. "has not engaged in [SGA] since February 2, 2021, the amended alleged onset date and the application date." (Doc. 9-2 at 20).  Thus, the ALJ's analysis proceeded to step two.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe.  20 C.F.R. § 404.1520(a)(4)(ii).  If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore, not disabled."  20 C.F.R. § 404.1520(c).  If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step.

4

The ALJ found that Ms. M.:

> has the following severe impairments:
> degenerative disc disease; femoral acetabular
> impingement syndrome; migraines; major
> depressive disorder; anxiety; post-traumatic and
> stress disorder.

(Doc. 9-2 at 20).

The ALJ also identified Ms. M.'s non-severe impairments as:

hyperopia; astigmatism; dizziness; and alcohol use in sustained

remission.  (*Id*. at 21).

At step three, the ALJ must determine whether the severe

impairment or combination of impairments meets or equals the medical

equivalent of an impairment listed in 20 C.F.R. Part 404, Subpt. P, App.

1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526).  If the ALJ determines

that the claimant's impairments meet these listings, then the claimant

is considered disabled. 20 C.F.R. § 404.1520(a)(4)(iii).  The ALJ

determined that none of Ms. M.'s impairments, considered individually

or in combination, met or equaled a Listing.  (Doc. 9-2 at 21).

Specifically, the ALJ considered Listings: 11.02 (epilepsy); 1.15

(disorders of the skeletal spine resulting in compromise of a nerve

root(s)); 1.16 (lumbar spinal stenosis resulting in compromise of the

5

cauda equina); 1.17 (reconstructive surgery or surgical arthrodesis of

major weight bearing joint); 1.18 (abnormality of a major joint(s) in any

extremity); 14.09 (inflammatory arthritis); 12.04 (depressive, bipolar

and related disorders); 12.06 (anxiety and obsessive-compulsive

disorders); and 12.15 (trauma and stressor related disorders).

Between steps three and four, the ALJ determines the claimant's

residual functional capacity ("RFC"), crafted upon consideration of the

medical evidence provided.  The ALJ determined that Ms. M.:

> has the residual functional capacity to perform
> light work as defined in 20 CFR 416.967(b) except
> she can stand and/or walk four hours in an eight-
> hour workday. She can frequently balance, kneel,
> crouch, and climb ramps and stairs; and
> occasionally stoop, crawl, and climb ladders,
> ropes, or scaffolds. She should avoid concentrated
> exposure to extreme cold, wetness, humidity,
> noise, vibration, dangerous machinery, and
> unprotected heights. She has the mental capacity
> for work that that is limited to simple and routine
> tasks; involving only simple, work-related
> decisions; and with few, if any, workplace
> changes. She cannot perform production pace
> work and can only occasionally interact with
> supervisors and coworkers.

(Doc. 9-2 at 23).

6

Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant has the RFC to perform the requirements of their past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).  Past relevant work is defined as work the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b).  If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step.  The ALJ determined Ms. M. has no past relevant work.  (Doc. 9-2 at 29).

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work.  20 C.F.R. § 404.1520(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3).  If a claimant has the ability to make an adjustment to other work, they will not be considered disabled.  20 C.F.R. § 404.1520(a)(4)(v).

7

The ALJ made the vocational determination that Ms. M. was 34 years old on date the application was filed, defined as a younger individual age 18-49 by the Regulations.  20 C.F.R. § 416.963.  (Doc. 9-2 at 29).  The ALJ also noted that Ms. M. "has a limited education" as considered in 20 C.F.R. § 416.964.  (*Id.*).  The ALJ determined that upon consideration of these factors, Ms. M.'s RFC, and the testimony of a vocational expert, "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (Doc. 9-2 at 29).  The ALJ specifically identified the occupations of order caller and ticket seller.  (*Id.* at 30).

As a result of this analysis, the ALJ determined that Ms. M. was not disabled and denied Ms. M.'s applications for benefits.  (Doc. 9-2 at 30-31).

### 3. STANDARD OF REVIEW

In order to receive benefits under Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

8

not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically

9

determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a).  Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience.  20 C.F.R. § 404.1512(f); 20 C.F.R. § 416.912(f).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record.  *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted).  Substantial evidence is less than a

preponderance of the evidence but more than a mere scintilla.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of

evidence is not substantial evidence if the ALJ ignores countervailing

evidence or fails to resolve a conflict created by the evidence. *Mason v.*

*Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately

developed factual record, however, substantial evidence may be

"something less than the weight of the evidence, and the possibility of

drawing two inconsistent conclusions from the evidence does not

prevent [the ALJ's decision] from being supported by substantial

evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In

determining if the Commissioner's decision is supported by substantial

evidence the court must scrutinize the record as a whole." *Leslie v.*

*Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question

before the Court, therefore, is not whether Ms. M. is disabled, but

whether the Commissioner's finding that she is not disabled is

supported by substantial evidence and was reached based upon a

correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-

CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has

been held that an ALJ's errors of law denote a lack of substantial

11

evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

### 4. DISCUSSION

Ms. M. raises three issues that she contends merit reversal without remand pursuant to sentence four of Section 42 U.S.C. § 405(g), or alternatively, reversal with remand for a rehearing. (Doc. 12 at 1, 22). First, she argues that "the ALJ's mental residual functional capacity lacked evidentiary support." (Doc. 12 at 1). Second, she maintains that "substantial evidence does not support the ALJ's step three analysis." (*Id.*). Finally, she alleges that the "ALJ's multiple errors with symptom evaluation compel reversal." (*Id.*).

Because, as set forth below, we agree that substantial evidence does not support the ALJ's mental residual functional capacity

12

assessment, we will vacate the decision of the Commissioner and remand for rehearing.

### A. Plaintiff's Claim that ALJ Improperly Omitted Limitation to One- to Two-Step Tasks

Ms. M. argues that the ALJ reviewed the opinions of two state agency psychological consultants, P. Garito, Ph.D. and J. Gavazzi, Psy.D. (Doc. 12 at 10). The ALJ noted that the two consultants were highly qualified experts and concluded that the opinions were persuasive. (*Id*.). Notwithstanding the fact that the consultants opined that Ms. M. was limited to one and two-step tasks, the ALJ did not include such limitation in his RFC or in the hypothetical he posited to the Vocational Expert. (*Id*.). Had the ALJ included such limitation in his RFC and hypothetical, Ms. M. alleges that she would have been found disabled. (*Id*. at 13).

In response, the Commissioner asserts that the ALJ was not required to incorporate a limitation to one- to two-step tasks in his RFC. (Doc. 16 at 16). The Commissioner notes that the assessment of "an individual's [RFC] falls within the purview of the ALJ." (*Id*.) (citing Social Security Ruling (SSR) 96-8, 1996 WL 374184 (S.S.A. July 2,

1996; *Louis v. Comm's Soc. Sec.*, 808 F. App'x 114, 117 (3d Cir. 2020)).
The Commissioner asserts that the ALJ engaged in a "robust review" of
the record evidence and crafted an RFC that appropriately accounted
for Plaintiff's mental limitations. (Doc. 16 at 17-18). Accordingly, the
Commissioner argues that substantial evidence supports the ALJ's
residual functional capacity finding. (*Id.* at 21).

We will begin by setting forth the legal framework for an ALJ's
RFC assessment and then discuss the specific error complained of by
Plaintiff here, regarding the ALJ's assessment of her residual function
as it relates to her mental impairments.

### 1. Legal Framework for ALJ's RFC Assessment

The ALJ is tasked with assessing a claimant's RFC. 20 C.F.R. §
404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC]
is defined as that which an individual is still able to do despite the
limitations caused by his or her impairment(s)." *Burnett v. Comm'r of
Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*,
181 F.3d 358, 359 (3d Cir. 1999)). An RFC reflects the *most* that an
individual can still do, despite his or her limitations, and is used at
steps four and five of the ALJ's analysis. 20 C.F.R. §§ 404.1520,

14

404.1545; SSR 96-8P, 1996 WL 374184 at *2.  In crafting the RFC, the
ALJ must consider all the evidence of record, including medical signs
and laboratory findings, daily activities, medical source statements, and
a claimant's medical history.  SSR 96-8p, 1996 WL 374184, at *5; *see
also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000).  An ALJ's
RFC findings, however, must be supported by medical evidence.  *Doak
v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).  "[O]nce the ALJ has made
this [RFC] determination, [a court's] review of the ALJ's assessment of
the plaintiff's RFC is deferential, and that RFC assessment will not be
set aside if it is supported by substantial evidence."  *Black v. Berryhill*,
No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018).

Importantly, the Third Circuit instructs that the ALJ must not
only state the evidence considered which supports the result but also
indicate what evidence was rejected.  *Cotter v. Harris*, 642 F.2d 700,
704, 706-707 (3d Cir. 1981).  Because "an ALJ cannot reject evidence for
no reason or the wrong reason, an explanation from the ALJ of the
reason why probative evidence has been rejected is required so that a
reviewing court can determine whether the reasons for rejection were
improper."  *Id*.  The ALJ need not, however, undertake an exhaustive

discussion of all the evidence.  *See, e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record."  *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

In making the RFC determination, "the ALJ must consider all evidence before him" and "evaluate every medical opinion ... receive[d]." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 404.1527(c); *see also Adorno v. Shahala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence . . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects.").  The Social Security Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including ... symptoms, diagnosis, and prognosis, what [the claimant] can still do despite [his or her] impairment(s), and ... physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2).  Social Security Ruling ("SSR") 96-5p further clarifies

16

that "opinions from any medical source on issues reserved to the Commissioner must never be ignored," and specifically states that the ALJ's "decision must explain the consideration given to the treating source's opinion(s)." SSR 96-5p, 1996 WL 374183, at *3, *6 (July 2, 1996).

As this matter involves a claim filed after March 27, 2017[3], the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96-5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner articulates "how persuasive" he or

---

[3] As stated *supra*, Plaintiff applied for benefits on February 2, 2021. (Doc. 9-2 at 18).

she finds the medical opinions.  20 C.F.R. § 404,1520c(b).  The

Commissioner's consideration of medical opinions is guided by the

following factors: supportability; consistency; relationship with the

claimant (including the length of the treatment relationship, the

frequency of examinations, the purpose of the treatment relationship,

the extent of the treatment relationship, and the examining

relationship); specialization of the medical source; and any other factors

that tend to support or contradict the opinion.  20 C.F.R. § 404.1520c(c).

The most important of these factors is the "supportability" of the

opinion and the "consistency" of the opinion.  20 C.F.R. §

404.1520c(b)(2).

The ALJ must explain how he or she considered the

"supportability" and "consistency" of a medical source's opinion.  20

C.F.R. § 404.1520c(b)(2).  Generally, the ALJ may but is not required to,

explain his or her consideration of the other factors, but if there are two

equally persuasive medical opinions about the same issue that are not

the same, then the ALJ must explain how he or she considered the

other factors.  20 C.F.R. § 404.1520c(b)(3).  To facilitate judicial review,

the ALJ's decision must be accompanied by "a clear and satisfactory

explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d at 704, 706-707. An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see Hur*, 94 F. App'x at 133 ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g.*, *Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

### 2. The ALJ's Omission of the One- to Two-Step Task Limitation Assessed by State Agency Consultants

Ms. M.'s claim that the ALJ improperly excluded Dr. Garito and Dr. Gavazzi's limitation to one- to two-step tasks without adequate support or explanation is persuasive. The facts of this case are

19

analogous to the line of cases in this District that hold where an ALJ finds a medical opinion persuasive, he or she must explain a decision not to include a one- to two-step task limitation included in such opinion in the RFC. *See Shipman v. Kizaki*, No. 3:22-cv-00636, 2023 WL 5599607, at *8 (M.D. Aug. 29, 2023) (Mehalchick, J.); *Pokorny v. Kijazi*, No. 1:21-cv-00790, 2023 WL 6988360, at *6 (M.D. Pa. Oct. 23, 2023) (Schwab, M.J.); *Simon v. Kijakazi*, No. 1:20-cv-02064, 2022 WL 828935, at *9 (M.D. Pa. Mar. 18, 2022) (Carlson, M.J.); *Podunajec v. Saul*, No. 3:19-cv-01938, 2020 WL 7319779, at *6-7 (M.D. Pa. Dec. 11, 2020) (Saporito, J.).

The Court in *Simon* explained that the failure to further address or explain the decision to omit the one- to two-step task limitation from an opinion an ALJ finds persuasive constituted an error, noting:

> This limitation was a material aspect of the doctor's opinion and its unexplained absence from the RFC leaves an evidentiary void in this case. While the ALJ certainly was not required to include this limitation, the ALJ was required to explain the failure to include this limitation, particularly because the ALJ found this opinion to be generally persuasive and supported by the record.

2022 WL 828935, at *10; *see also Shipman*, 2023 WL 5599607, at *9

("[w]hile the ALJ certainly was not required to include a limitation to

one- and two-step tasks, the ALJ was required to explain the failure to

include this limitation, particularly because the ALJ found this opinion

to be generally persuasive and supported by the record.").

Here, the ALJ considered the record and formulated the following

RFC:

> the claimant has the residual functional capacity
> to perform light work as defined in 20 CFR
> 416.967(b) except she can stand and/or walk four
> hours in an eight-hour workday. She can
> frequently balance, kneel, crouch, and climb
> ramps and stairs; and occasionally stoop, crawl,
> and climb ladders, ropes, or scaffolds. She should
> avoid concentrated exposure to extreme cold,
> wetness, humidity, noise, vibration, dangerous
> machinery, and unprotected heights. She has the
> mental capacity for work that that is limited to
> simple and routine tasks; involving only simple,
> work-related decisions; and with few, if any,
> workplace changes. She cannot perform
> production pace work and can only occasionally
> interact with supervisors and coworkers.

(Doc. 9-2 at 23).

In discussing the opinions of Dr. Garito and Dr. Gavazzi, the

ALJ stated:

The record includes a May 2021 statement from a state agency psychological consultant, Peter J. Garito, PhD, and a March 2022 statement from a state agency psychological consultant, John David Gavazzi, PsyD. They stated the claimant has mild limitations understanding, remembering, or applying information; moderate limitations interacting with others; moderate limitations concentrating, persisting, or maintaining pace; and moderate limitations adapting or managing herself (1A/13-14; 3A/7-8). These statements are supported by the progress notes, which mostly show the claimant is fully oriented and alert with normal mood, appropriate affect, normal speech, intact language, normal behavior, normal thought processes, normal associations, normal thought content, intact recent and remote memory, intact attention, fair concentration, adequate fund of knowledge, fair insight, and normal judgment (8F; 9F; 10F; 14F; 15F; 16F; 18F; 19F; 20F; 21F; 26F; 29F; 30F; 27F; 38F; 40F; 43F). These statements are also consistent with the claimant's lack of recent inpatient mental health treatment or referral to crisis intervention. Further, Dr. Garito and Dr. Gavazzi are highly qualified experts who had the opportunity to review the claimant's records. Therefore, the undersigned finds Dr. Garito's and Dr. Gavazzi's statements are persuasive.

(Doc. 9-2 at 28).

The ALJ questioned the vocational expert about available jobs for

Ms. M. in the national economy based upon her RFC. (Doc. 9-2 at 53-

59). Specifically, the ALJ stated:

22

> [P]lease assume an individual the same age,
> education and work experience as the claimant.
> Person would be able to perform work at a light
> exertional level, no more than four hours stand or
> walk.  Frequent use of ramps, stairs, frequent
> balancing, kneeling, crouching.  Occasional use of
> ladders, ropes, scaffolds, occasional stoop, crawl.
> Avoid concentrated exposure to extreme cold,
> wetness, humidity, noise, vibration, dangerous
> machinery and unprotected heights.  Work that is
> limited to simple and routine tasks involving only
> simple work-related decisions with few if any
> workplace changes.  No production pace work,
> only occasional interaction with supervisors and
> coworkers . . . . are there any occupations in the
> national economy at the light exertional level
> that such a person could perform?

(*Id*. at 54-55).

Thus, despite the ALJ finding the opinions of Dr. Garito and Dr. Gavazzi persuasive, the ALJ did not incorporate the one- to two-step task limitation included in those opinion in Plaintiff's RFC or the question posited to the vocational expert.  (*Id*. at 28, 54-55).  The ALJ was not required to incorporate this limitation into his RFC or into the hypothetical posited to the vocational expert, but he was required to address it and explain his determination that contrary to the findings of Dr. Garito and Dr. Gavazzi, Plaintiff is not limited to one- to two-step

23

tasks. *See Simon*, 2022 WL 828935, at *10; *see also Shipman*, 2023 WL 5599607, at *9.

The ALJ's omission of an explanation for discounting the State agency consultants' one- to two-step task limitation is not harmless error. The *Dictionary of Occupational Titles* ("DOT") describes the general educational development of each occupation. *Shipman*, 2023 WL 5599607, at *9. "General educational development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *Id.* (citing DOT, Appendix C, 1991 WL 688702). The GED scale is composed of three divisions, but only one is relevant here—reasoning development. *Id.* (citing DOT, Appendix C, 1991 WL 688702). In occupations with a reasoning development level of 1, satisfactory job performance requires that an employee be able to "[a]pply commonsense understanding to carry out simple one-or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* (citing DOT, Appendix C, 1991 WL 688702). In occupations with a reasoning development level of 2, satisfactory job performance requires that an employee be able to "[a]pply commonsense

understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations." *Id*. (citing DOT, Appendix C, 1991 WL 688702).

The plain language of the DOT definition for GED Reasoning Development Level 1 suggests there is no conflict between it and a limitation to no more than one- to two-step tasks.  *Id*.  Accordingly, courts have found that a limitation to one- to two-step tasks is consistent with GED Reasoning Development Level 1, but *inconsistent* with GED Reasoning Development Level 2.  *Id*. at *10 (quoting *Ferrebee v. Kijakazi* No. 3:20-CV-02188, 2022 WL 905153, at *4 (M.D. Pa. Mar. 28, 2022) (collecting cases).  Because GED Reasoning Level of 2 may conflict with a limitation of one-to-two step tasks, courts typically remand where a there is a conflict involving a limitation to one-to-two step tasks and the only occupations cited by a vocational expert and ALJ contain a GED Reasoning Development Level 2.  *Id*. (Error was not harmless and required remand required where occupations listed by vocational expert and adopted by ALJ had GED Reasoning Development Levels of 2 or greater).

25

On the other hand, in cases where ALJs failed to explain a decision not to incorporate a one- to two-step task limitation, but the vocational expert identified at least one job with a GED Reasoning Development Level of 1, the error has been deemed harmless with no need for remand.  *See, e.g., Soto v. Kijakazi*, No. 4:21-CV-1531, 2022 WL 4358087, at *11 (M.D. Pa. Sept. 20, 2022) (error was harmless and no remand required where claimant with one-to-two step task limitation would still be able to perform one of jobs identified by vocational expert with GED Reasoning Development Level of 1).

Here, the vocational expert indicated that Ms. M. could perform the jobs of order caller, which has a Reasoning Development Level of 2 and ticket seller, which has a Reasoning Development Level of 3.  (Doc. 9-2 ay 30).[4]  Because there are no positions identified by the vocational expert with a GED Reasoning Development Level of 1, the ALJ's failure to explain his decision not to incorporate the one- to two-step task

_____

[4] *See also see also* DICTIONARY OF OCCUPATIONAL TITLES, Order Caller (DOT 209.667-014), 1991 WL 671807; and Ticket Seller (DOT 211.467-030), 1991 WL 671853.

limitation is not harmless error.   Therefore, the ALJ's decision was not

supported by substantial evidence and remand is required to properly

consider Dr. Garito and Dr. Gavazzi's identified one- to two-step task

limitation.

## B. Remaining Arguments

Because it will be ordered that the decision of the Commissioner

be vacated and remanded for further consideration so that the ALJ may

properly consider Dr. Garito and Dr. Gavazzi's identified limitation of

one-to two-step tasks, Plaintiff's remaining arguments need not be

addressed.  "A remand may produce different results on these claims,

making discussion of them moot."  *Burns v. Colvin*, 156 F.Supp.3d 579,

598 (M.D. Pa. 2016).  Evaluation of Plaintiff's additional contentions

would be futile given that the ALJ's reconsideration of Plaintiff's

limitations may yield a different result.

### 5. REMEDY

The Court has authority to affirm, modify or reverse the

Commissioner's decision "with or without remanding the case for

rehearing."  42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89,

100-01 (1991).  However, the Third Circuit has advised that benefits

should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). *See generally Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Because the ALJ's decision was not supported by substantial evidence, further development of the record is required. Accordingly, the decision of the Commissioner will be vacated and the case will be remanded.

## 6. <u>CONCLUSION</u>

Based on the foregoing and pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision will be **vacated** and the case will be **remanded** to the Commissioner to fully develop the record, conduct a new administrative hearing, and appropriately evaluate the evidence.

An appropriate Order is filed simultaneously with this Memorandum.

**Dated:** September 23, 2025          *s/ Leo A. Latella*
                                                        **LEO A. LATELLA**
                                                        **United States Magistrate Judge**

28